1  P. Kristofer Strojnik, SBN 026082
2  THE STROJNIK FIRM LLC
   pstrojnik@strojniklaw.com
3  Esplanade Center III, Suite 700
   Phoenix, Arizona 85016
4  415-450-0100 (tel.)

5  Attorneys for Plaintiff

6

7                    **UNITED STATES DISTRICT COURT**

8                        **DISTRICT OF ARIZONA**

9  Peter Kristofer Strojnik, dealing with his
   sole and separate claim,                          Case No: 2:23-cv-00340-SPL
10

11              Plaintiff,                            ***EX PARTE* APPLICATION FOR**
                                                      **TEMPORARY RESTRAINING**
12 vs.                                                **ORDER AND PRELMINARY**
                                                      **INJUNCTION**
13
   American Express Company, a New York
14 corporation,

15              Defendant.

16

17                    **NOTICE OF MOTION AND MOTION**

18        Pursuant to Rule 65, Federal Rules of Civil Procedure, and LR 65.1, Plaintiff

19 Peter Kristofer Strojnik, by and through undersigned counsel, moves for a temporary

20 restraining order and a preliminary injunction enjoining Defendant American Express

21 Company from continuing to report false information about Plaintiff to the three major

22 credit bureaus. Specifically, Defendant AMEX has falsely reported to the three credit

23 bureaus that the alleged closed debt at issue (a credit card that was charged-off in 2019)

24 has been 90 days late a whopping 31 times even though prior to this lawsuit being filed,

25 Defendant only reported 90 days late 3 times. Defendant AMEX has retaliated against

26 Plaintiff after Plaintiff sued it for breaching the settlement agreement for the alleged

27 debt by reporting 90-day late payments on the account 31 times. As of January of this

28 year, before this lawsuit was filed, Defendant AMEX reported only three 90-day late

payments. After this lawsuit was filed, Defendant AMEX changed it from "3" 90-day late payments to "31" 90-day late payments, which has caused Plaintiff irreparable and immeasurable harm in Plaintiff's desire to purchase a vacation home for his family and children. With this Motion, Plaintiff asks that the Court enjoin Defendant from further reporting 31 90-day late payments and correcting it back to 3 of them, as 31 90-day late payments is akin to kryptonite for obtaining a favorable interest rate on a loan, or a loan at all.

This Application for Temporary Restraining order and Preliminary Injunction is being made with notice to Defendants. This Application is supported by the accompanying Memorandum of Points and Authorities, Plaintiff's Amended Complaint, documents evidencing the settlement agreement between the parties, documents evidencing Plaintiff's performance, documents evidencing Defendant's breach, and documents supporting Defendant's retaliatory reporting of false and misleading information following this lawsuit being filed.

## ATTORNEY CERTIFICATION

The below undersigned counsel hereby certified that notice of this Motion was provided to Defendant's counsel before it was filed. Undersigned counsel further certifies that counsel for Defendant will receive notice of this Motion through ECF at the time of filing. In the event the Court does not provide ex parte relief, undersigned counsel requests the most immediate hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff began the process of buying a vacation home for his family and children in January of this year. In furtherance of this endeavour, Plaintiff sought to remedy a few items on his credit report at the direction of his mortgage broker. One of those items was an alleged derogatory account by Defendant AMEX ("AMEX"). As of January 26, 2023, that account was listed as derogatory in the amount of $9,121.00 for an AMEX credit card that was charged off in 2019. As of January 26, 2023, the account

1  was listed as "Closed by Credit Grantor" by AMEX and also listed "3" 90-day late

2  payments.

3      Plaintiff contacted AMEX in late January and settled the alleged debt; at the

4  time, Plaintiff had no concern with the alleged 3 90-day late payments. Plaintiff agreed

5  to pay $3,648.78 in exchange for the AMEX reporting the account as "Settled With

6  Zero Balance." Plaintiff paid the settlement amount. However, AMEX failed to comply

7  with the settlement terms; instead, after Plaintiff performed, Defendant listed the debt as

8  still owing $5,473.00, which is the difference between what AMEX claimed was

9  originally owed minus Plaintiff's payment of the settlement amount. AMEX breached

10  the settlement. While not relevant to the instant Motion, Plaintiff was forced to contact

11  the credit bureaus directly to correct AMEX's breach, which they did. As of today's

12  date, the alleged debt correctly reported as showing a $0.00 balance. Nevertheless, it

13  was this breach and fraudulent reporting of a remaining balance due that precipitated

14  the instant lawsuit.

15      However, and this is something that Plaintiff did not notice and only became

16  aware of until or around April 12, 2023, after AMEX falsely and fraudulently reported a

17  remaining balance in breach of the settlement agreement, AMEX also retaliated against

18  Plaintiff for this lawsuit by falsely changing the 90-day late payments from 3 to a

19  whopping 31!!!!! This occurred in March (Plaintiff did not discover the multiplication

20  of the 90-day late pays until April) after AMEX itself had already reported the account

21  as "Closed by Credit Grantor".

22      Indeed, how can late payments increase exponentially after the account had been

23  closed for years??? The answer is that they cannot. In fact, as outlined below, detailed

24  accounting of the AMEX tradeline provided by Equifax shows that while AMEX is

25  falsely reporting 31 90-day late payments, the detailed accounting of the tradeline

26  shows that there are only 3 documented 90-day late pays in 2019 immediately before

27  AMEX charged off the account.

28

1    Showing 31 90-day late payments on a person's credit report is kryptonite to

2    obtaining a favorable interest rate or a loan at all. With this Motion, Plaintiff seeks

3    immediately relief enjoining AMEX from continuing to report 31 90-day late payments

4    and changing it back to three of them as was originally reported before Plaintiff sued

5    AMEX. The harm to Plaintiff is irreparable and immeasurable, as Plaintiff cannot affix

6    a dollar amount to what these 31 90-day late payments is causing him. What Plaintiff

7    can tell the Court, in terms of measurement, is that the best loan Plaintiff may be able to

8    obtain requires him to put 40 percent of the purchase price on the vacation home as a

9    down payment, which is directly and proximately caused by the risk involved with

10   taking on a prospective borrower who has 31 90-day late payments on the same

11   account.

12   **II. FACTUAL BACKGROUND**

13   **A. _Mid-January 2023_ - Plaintiff Decides to Purchase Vacation Home and**
         **Address Any Potential Credit Issues**
14

15   Plaintiff is an attorney who practices primarily in California federal courts, but

16   his primary residence is here in Phoenix. *See* Exhibit 1 (Decl. of Counsel). In or around

17   January 2023 (a few months ago), Plaintiff made the decision to explore the purchase of

18   a vacation home in Northern Arizona to spend family time with his wife and four

19   children. *Id*. Plaintiff's first step was to contact his mortgage broker, Frank Madia of

20   Equitbable Home Mortgage. *Id*. Mr. Madia thereafter ran Plaintiff's credit through

21   Advantage Credit, which is the primary credit agency that mortgage lenders utilize to

22   determine a potential borrower's worthiness. The credit report was run on January 26,

23   2023 (the "January Report"). A copy of the January Report is affixed hereto as Exhibit

24   2.

25   Mr. Madia noticed some issues that required attention on the January Report,

26   which he reported to Plaintiff. Exhibit 1. Among these issues were an open Infiniti

27   account and a closed BMW account. Exhibit 2. Plaintiff immediately settled these

28   issues with Infiniti and BMW. Exhibit 1.

1
2

**B.** ***January 26, 2023* - AMEX Reported a "Closed" Balance of $9,121 in the January Report and Three (3) 90-Day Late Payments**

3    Plaintiff also sought to address a closed AMEX account that was reported to all

4    three credit reporting agencies. A copy of that tradeline on the January Report is

5    reproduced here:



9

10    A few particulars of this tradeline are germane to the instant Motion. *First*, as

indicated by the **Green Arrow**, the "Account Closed." This is germane because two

11    months later, in retaliation of the instant lawsuit, AMEX apparently fraudulently

12    modified the account to increase the 90-day late payments from 3 to 31. *Infra*. Second,

13    as indicated by the **Blue Arrow**, the Court will note that as of the January Report

14    (January 26, 2023), there are only three (3) 90-day late payments. This is germane

15    because two months later, AMEX changed that to 31 late payments, which is the

16    subject of this Motion.[1]

17
18
19

**C.** ***January 30, 2023 – February 28, 2023* - Plaintiff Settled the AMEX Alleged Debt, But Defendant Breached the Settlement Thereby Precipitating This Lawsuit**

20    Although not at issue to this Motion and the immediate and irreparable harm

21    Plaintiff is suffering now, AMEX's breach of a settlement agreement is important for

22    purposes of a full story. On or around January 30, 2023, Plaintiff contacted AMEX for

23    purposes of clearing the alleged debt reported on the January Report. Exhibit 1. On

24    January 30, 2023, Plaintiff and AMEX settled the alleged debt on the following terms:

25

---

26    [1] What is not subject of the instant Motion is the original claim in this case. The original
claim alleged (and continues to allege in the Amended Complaint) that Defendant
27    breached a settlement agreement with Plaintiff by fraudulently and falsely reporting a
balance due even though the parties settled for "Zero Balance." This issue has somewhat
28    been mooted because Plaintiff made a dispute with the credit reporting agencies, which
the latter corrected to a zero balance. Nevertheless, the damages that Plaintiff seek on
this claim remain live.

1  Plaintiff would pay $3,648.78 in exchange for a full settlement of the account and

2  "American Express will report your account settled with zero balance." *See* Exhibit 3

3  (January 30, 2023 letter from AMEX). One day later, on January 31, 2023, Plaintiff

4  paid the settled amount as agreed. *See* Exhibit 4 (January 31, 2023 e-mail from

5  AMEX); *see also* Exhibit 5 ("Our records indicate that you have completed your

6  settlement agreement and resolved the outstanding balance on your account referenced

7  above.").

8       Despite Plaintiff performing on the settlement and AMEX recognizing that

9  Plaintiff performed (Exhibits 4-5), AMEX did <u>not</u> perform. AMEX breached the

10  Agreement despite multiple contact attempts from Plaintiff attempting to compel

11  AMEX to correctly report the $0.00 balance to the credit reporting agencies. *See e.g.*

12  Exhibit 6 (e-mails from Plaintiff to AMEX pleading with the latter to perform on

13  settlement); *see also Infra* (March Report confirming that AMEX still reporting balance

14  due after Plaintiff settled account).

15       1.  *February 26, 2023 -* Plaintiff is Forced to Sue AMEX.

16       After several failed attempts to even receive a response from AMEX, Plaintiff

17  sued AMEX. Doc. 1. In the original Complaint, Plaintiff alleged several counts

18  centering around AMEX's breach of the settlement agreement and continued fraudulent

19  reporting of the account. Plaintiff later amended the Complaint (the claims alleged

20  subject of this Motion) to allege Defendant's false multiplication of 90-day late

21  payments.

22       **D.  *March 19, 2023 -* Plaintiff's Offer is Accepted on Vacation Home With**
         **Closing Set for May 3, 2023**
23

24       On or around March 19, 2023, Plaintiff's counter-offer on the vacation home

25  was accepted. The seller and buyer had agreed to terms. Exhibit 1. Closing was set for

26  May 3, 2023.

27       **E.  *March 20, 2023 -* Unbeknownst to Plaintiff at the Time, AMEX**
         **Retaliated Against Plaintiff for the Lawsuit by Changing the 90-Day**
28       **Late Payments from 3 to 31**

6

1
2
3
4
5

On March 20, 2023, Plaintiff's new mortgage broker, Kip Moyer of Tylann Mortgage, ran Plaintiff's credit report again, using the same Advantage Credit company that was used in the January Report. The March 20, 2023 credit report is affixed hereto as Exhibit 7 and referenced herein as the "March Report".

6
7
8
9

At the time of the March Report, Plaintiff's focus was still on AMEX's breach of the settlement and had no knowledge of or even suspicion of AMEX's manipulation of the 90-day late payments, which is at issue in this Motion. A copy of the AMEX tradeline in the March Report is reproduced here:

10
11
12
13
14
15

| E C O A | W H O S E | CREDITOR | DATE REPORTED | DATE OPENED | HIGH CREDIT OR LIMIT | BALANCE | PAST DUE | MO REV | 30 | 60 | 90+ | STATUS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | DLA | ACCT TYPE | TERMS | | | | | | SOURCE |
| B | B | AMEX -3499925960528503 | 02/23 | 07/18 01/19 | $9121 OPEN | $5473 001 $5473* | $5473 | 48 | 1 | 1 | 31 | CHARGE OFF XP/TU/EF |

ACCOUNT CLOSED BY CREDIT GRANTOR; ACCOUNT PAID IN FULL FOR LESS THAN THE FULL BALANCE; CONSUMER DISPUTES - REINVESTIGATION IN PROGRESS

| Trended | 02/23 | 01/23 | 12/22 | 11/22 | 10/22 | 09/22 | 08/22 | 07/22 | 06/22 | 05/22 | 04/22 | 03/22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Scheduled ($) | - | - | - | - | - | - | - | - | - | - | - | - |
| Actual ($) | - | - | - | - | - | - | - | - | - | - | - | - |
| Balance ($) | 5473 | - | - | - | - | - | - | - | - | - | - | - |

16
17
18
19
20
21

As the Court can see, the account is still closed. As the Court can also see, AMEX's breach of the settlement is in black and white; despite agreeing to list the account as "Settled with Zero Balance," it still lists a balance of $5,473.00. But, germane to this Motion is highlighted by the **Green Arrow**. Despite the account having been closed for almost four years, AMEX changed the 90-day late payments from "3" to "31". This occurred after Plaintiff filed the instant lawsuit.

22
23
24
25

Please note, however, Plaintiff did not even notice the false and fraudulent manipulation that AMEX made at the time; rather, his focus was on the fact that AMEX was still listing a fraudulent balance in direct breach of the parties' settlement agreement. Exhibit 1.

26
27
28

F. **Actual Detailed Accounting of the AMEX Tradeline Shows That the Original Report of Only 3 90-Day Late Payments Was Correct and Further Evidences AMEX's Retaliatory Action Against Plaintiff by Multiplying the 90-Day Late Payments to 31**

1    As detailed in the January Report, before this lawsuit was filed, there were only

2  3 90-day late payments reported, but the March Report multiplied that to 31.

3  Fortunately, detailed accounting can expose AMEX's fraud, to wit: Plaintiff has an

4  Equifax account, which any consumer can purchase. In Plaintiff's Equifax account, a

5  detailed view of the AMEX tradeline shows the following: (1) There are only 3

6  documented 90-day late payments, (2) the AMEX account was "Charged Off" in

7  August of 2019 with only 3 90-day late payments before the charge-off. It is not

8  permissible to both charge off an account and continue to multiply 90-day late

9  payments after the charge-off. A review of Plaintiff's detailed Equifax account, for

10  which Plaintiff seeks judicial notice, can be found at Exhibit 8. *See Id*. (Screenshots of

11  Equifax account for AMEX tradeline showing 2019, 2020, 2021, 2022 and 2023 –

12  charge off in 2019 after only 3 90-day late payments). A copy of the date of the charge-

13  off immediately preceded by the correct 3 90-day late payments is provided

14  immediately below (Exhibit 8):



25    As the Court can see, while AMEX fraudulently reported 31 90-day late

26  payments (Exhibit 7), it cannot support such a fraudulent report since actual accounting

27  of the AMEX tradeline shows only 3 (as originally reported in January Report before

28  AMEX retaliated against Plaintiff) 90-day late payments before the account was

1   charged off in August of 2019. Exhibit 8 (see three arrows above pointing to 3 90-day

2   late payments).

3         **G.** *April 12, 2023 – Plaintiff First Discovers the Fraudulent Report of 31 90-day Late Payments Resulting in Lender Offering a Loan 40 Percent Down as a Direct Consequence*

5         On or around April 12, 2023, Mr. Moyer (Plaintiff's mortgage broker, *supra*)

6   wrote to Plaintiff:

7
8         *We want to talk to our account executive to discuss the AMEX issues and the 31 x 90 day late payments. We want to see if there is a strategy for attempting to circumvent this issue. Right now it is holding our ability to generate docs and the account executive can be helpful with better understanding this issue.* Ideally it would be amazing if AMEX could update your late pays, etc. I know you have a suit vs them and I assume this is at least part of the suit from reading the complaint. I will let you know what the AE recommends as a strategy.

13        Exhibit 1 (emphasis supplied). Plaintiff was surprised, as he was unaware as of

14  April 12, 2023 that AMEX had multiplied the 90-day late payments since that was not

15  the focus of the instant lawsuit at the time; the original complaint only alleged that

16  AMEX had breached its settlement agreement. Doc. 1.

17        Upon reading what Mr. Moyer had said, Mr. Moyer sent Plaintiff a third credit

18  report ran on the same day of the communication above. A copy of this April 12, 2023

19  credit report (the "April Report") is affixed hereto as Exhibit 9. The details of the

20  AMEX tradeline are reproduced below and confirms that the 31 90-day late payments

21  remained, but the balance had now been correct reduced to $0.00 after Plaintiff had

22  filed a dispute with the credit reporting agencies, to wit:

| ECOA | HOUSE | CREDITOR | DATE REPORTED | OPENED | OR LIMIT | BALANCE | PAST DUE | MO REV | 30 | 60 | 90+ | STATUS |
|------|-------|----------|---------------|--------|----------|---------|----------|--------|----|----|-----|--------|
|      |       |          |               | DLA    | ACCT TYPE | TERMS   |          |        |    |    |     | SOURCE |
| B | B | AMEX -3499925960528503 | 03/23 | 07/18 01/19 | $0 OPEN | $0 001 $0 | $0 | 48 | 1 | 1 | 31 | PAID CHGOFF XP/TU/EF |

ACCOUNT PAID FOR LESS THAN FULL BALANCE; PAID CHARGE OFF

| Trended | 02/23 | 01/23 | 12/22 | 11/22 | 10/22 | 09/22 | 08/22 | 07/22 | 06/22 | 05/22 | 04/22 | 03/22 |
|---------|-------|-------|-------|-------|-------|-------|-------|-------|-------|-------|-------|-------|
| Scheduled ($) | - | - | - | - | - | - | - | - | - | - | - | - |
| Actual ($) | - | - | - | - | - | - | - | - | - | - | - | - |
| Balance ($) | 5473 | - | - | - | - | - | - | - | - | - | - | - |

1    Exhibit 9. As the Court can see, the 31 90-day late payments still show as of

2    April 12, 2023, but detailed accounting of the AMEX tradeline shows that only 3 90-

3    day late payments were on the account before it was charged off. See Exhibit 8

4    (Equifax detailed accounting of AMEX tradeline). Therefore, it is clear that while

5    AMEX sought to retaliate against Plaintiff by listing 31 90-day late payments, the math

6    simply does not support it.

7    AMEX deceptively and fraudulently retaliated against Plaintiff for this lawsuit,

8    for which Plaintiff continues to suffer irreparable injury that requires immediate

9    attention. Indeed, Plaintiff's closing date is May 3, 2023, and AMEX's listing of a

10    whopping 31 90-day late payments has caused extreme difficulty for Plaintiff in

11    obtaining favorable financing.

12    **H. Summary of Timeline**

13    ➢ **2019** – Three 90-day late payments added to AMEX account;

14    ➢ **August 2019** – AMEX closes and charges off account;

15    ➢ **January 26, 2023** – AMEX only lists 3 90-day late payments;

16    ➢ **February 2023** – Plaintiff sues AMEX for breaching settlement

17    agreement;

18    ➢ **March 2023** – AMEX retaliates and changes 90-day late payments from

19    3 to 31.

20    **III.    ANALYSIS**

21    For issuance of a temporary restraining order and preliminary injunction in

22    Arizona, the following prerequisites must be established: (1) a likelihood of success on

23    the merits; (2) the possibility of irreparable harm to the Plaintiff if relief is not granted;

24    (3) a balance of hardships favoring the Plaintiff; and (4) public policy favoring the

25    requested relief. *Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II*, 176 Ariz.

26    275, 860 P.2d 1328 (App. 1993), review dismissed 179 Ariz. 180, 877 P.2d 279 (1994).

27    The critical element in this analysis is the relative hardship to the parties. *Shoen v.*

28    *Shoen*, 167 Ariz. 58, 63, 804 P.2d 787, 792 (App. 1990). To meet this burden, the

1    moving party may establish either (1) probable success on the merits and the possibility

2    of irreparable injury; or (2) the presence of serious questions and the balance of

3    hardships tip sharply in plaintiff's favor. *Id*. Plaintiff meets this standard and a

4    temporary restraining order and preliminary injunction are therefore warranted. Indeed,

5    admissible evidence clearly show that Defendant AMEX is lying to credit reporting

6    agencies by fraudulently reporting 31 90-day late payments when in fact only 3 late

7    payments are actually supported.

8            **A.  <u>Plaintiff Will Succeed on the Merits</u>**

9           A party seeking a temporary restraining order and/or preliminary injunction

10   assumes a lesser burden of proof of likelihood of success on the merits than does a party

11   moving for summary judgment and thus, does not have to show entitlement to judgment

12   as a matter of law. *Powell-Cerkonev v. TCR-Montana Ranch Joint Venture, II*, 176

13   Ariz. 275, 280, 860 P.2d 1328, 1333 (App. 1993). Rather, a party seeking a temporary

14   restraining order and preliminary injunction must merely show probable success on the

15   merits of the underlying action. *Id*.

16          Here, Plaintiff can easily show that he will succeed on the merits since the

17   conduct of AMEX is not shown clearly with evidence, it is apparent that AMEX is

18   brazen with its nefarious schemes and simply got caught. Not only did AMEX first

19   brazenly violate a settlement agreement between the parties, which could only be

20   corrected with a dispute with the three major credit reporting agencies, but AMEX now

21   has retaliated against Plaintiff for this lawsuit by manipulating the 90-day late payments

22   from 3 to 31…and AMEX is not even hiding its scheme. AMEX is currently

23   fraudulently providing false information to the three major credit reporting agencies,

24   which is a very clear violation of the Fair Credit Reporting Act. 15 U.S.C. 1681 et seq.

25   Accordingly, AMEX should be enjoined from continuing to falsely report the 90-day

26   late pays.

27          **B.  <u>Plaintiff Will Suffer Irreparable Harm Unless a Temporary Restraining Order is Issued</u>**

28

1    Under this factor, a party must show a possibility of irreparable injury not

2  remediable by damages. *Shoen*, 167 Ariz. At 63. Although monetary damages can

3  provide an adequate remedy at law and thus remediate damages at times, where a loss is

4  uncertain, monetary damages may be inadequate. *IB Property Holdings LLC v. Rancho*

5  *Del Mar Apartments Ltd. Partnership*, 228 Ariz. 61, 73, 263 P.3d 69, 73 (App. 2011).

6  Difficulty of proving damages with reasonable certainty aids in establishing uncertainty

7  of loss and irreparable injury. *Id*.; *see also* Restatement (Second) of Contracts 360 cmt.

8  b (damages inadequate remedy if injured party can provide some but not all loss).

9    With the instant issue, Plaintiff cannot measure his damages in terms of money,

10  at least not with any particularity. Plaintiff and his broker have been attempting to

11  "circumvent the AMEX issue" in an attempt to qualify for a vacation home for

12  Plaintiff's family and children, which has resulted in an ungodly down payment of 40%

13  of the purchase price of the home. The damage caused by a whopping 31 90-day late

14  payments on one account cannot be measured, e.g difference between 3 late pays and

15  31 late pays, is immeasurable but it is certainly staggering in an attempt to qualify for

16  credit. Accordingly, AMEX must be enjoined from further damaging Plaintiff,

17  especially considering that Plaintiff is attempting to close on this vacation home on

18  May 3, and so the need is urgent and immediate.

19    **C.**  **The Balance of Potential Hardship Weighs Heavily in Plaintiff's Favor**

20    If Plaintiff can establish probable success on the merits and the possibility of

21  irreparable injury, then the balance of hardship weights in Plaintiff's favor. *The Power*

22  *P.E.O., Inc. v. Employees Ins. of Wausau*, 210 Ariz. 559, 562, 38 P.3d 1224, 1227

23  (App. 2002). As noted supra, it is clear that Plaintiff is likely to succeed on the merits

24  both on the original claim (credit bureaus corrected AMEX's breach) and the amended

25  claims (detailed Equifax accounting shows AMEX is lying about the 31 late payments)

26  and has suffered irreparable injury from AMEX's conduct (40% down payment, broker

27  trying to circumvent "AMEX issue"), tipping the balance of hardships in Plaintiff's

28  favor.

**D. Public Policy Favors the Granting Plaintiff's Requested Relief**

Public policy is not served in Arizona by protecting false and fraudulent activities by powerful creditors such as AMEX. Although Plaintiff is a lawyer, he is a citizen and being picked on by a large corporation as an apparent cost of doing business. Indeed, AMEX does not even seem to be hiding their criminal conduct. Moreover, it is fortunate that Plaintiff is a lawyer and knows the law somewhat. However, millions of persons in Arizona are not lawyers, and public policy should protect them from predatory credit card companies such as AMEX who can use their considerable power by a simple report to a credit bureau to ruin the lives of ordinary citizens who do not know the law.

**IV. CONCLUSION**

Wherefore, Plaintiff respectfully requests the following: Defendant AMEX be immediately enjoined from continuing to falsely report 31 90-day late payments on Plaintiff's credit reports. The evidence supporting Plaintiff's claims are so conspicuous that it is clear that AMEX is brazen with its law-breaking and perhaps considers this lawsuit as a cost of doing business for its unscrupulous and nefarious schemes.

RESPECTFULLY SUBMITTED this 16th day of April, 2023.

/s/ P. Kristofer Strojnik
P. Kristofer Strojnik (026082)
Attorneys for Plaintiff

13