Daniel P. Velocci (025801)
**IANNITELLI MARCOLINI, P.C.**
5353 North 16th Street, Suite 315
Phoenix, Arizona 85016
Telephone: (602) 952-6000
Email: dpv@imlawpc.com
Attorneys for Defendant
  AMERICAN EXPRESS NATIONAL BANK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Peter Kristofer Strojnik, dealing with his sole and separate claim,<br><br>Plaintiff,<br><br>v.<br><br>American Express Company, a New York corporation,<br><br>Defendant. | Case No. 2:23-cv-00340-SPL<br><br>**MOTION OF AMERICAN EXPRESS NATIONAL BANK TO COMPEL ARBITRATION AND STAY ACTION** |

Defendant American Express National Bank ("American Express"), erroneously sued as American Express Company, through its respective counsel of record, hereby moves this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA") and Arizona Revised Statutes Annotated ("A.R.S") § 12-1502, made applicable by A.R.S. § 12-3003(B)(3) and (C), for an Order compelling plaintiff Peter Kristofer Strojnik ("Plaintiff") to arbitrate the claims he asserts against American Express in this action. American Express further seeks an Order staying this action, pending completion of arbitration proceedings.

The Motion is made on the grounds that a valid, enforceable and irrevocable agreement to arbitrate exist between American Express and Plaintiff, which encompasses Plaintiff's claims. Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq. (the "FAA") and the parties' arbitration agreement, upon election by either party, Plaintiff must arbitrate his claims

as required by the arbitration agreement Plaintiff entered into with American Express. This action must be stayed pending completion of the arbitration.

This Motion is based upon the accompanying points and authorities, the Declaration of Keith Herr, all papers and pleadings on file, and all other evidence or argument the Court may permit at the hearing in this matter

**RESPECTFULLY SUBMITTED** this 27th day of April, 2023.

**IANNITELLI MARCOLINI, P.C.**

By  /s/ *Daniel P. Velocci*
Daniel P. Velocci
*Attorneys for Defendant*

4892-2906-9152, v. 2

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................ **ERROR! BOOKMARK NOT DEFINED.**

I. INTRODUCTION ..................................................................................................... 1

II. FACTUAL BACKGROUND ................................................................................... 2

    A. The Parties ..................................................................................................... 2

    B. Plaintiff's American Express Account and The Binding Arbitration Provision. ........................................................................................................ 2

    C. Allegations of the Complaint ........................................................................ 4

III. ARGUMENT ............................................................................................................ 4

    A. Legal Standard .............................................................................................. 4

    B. Plaintiff's Claim Is Subject To Binding Arbitration Pursuant To The Arbitration Provision In The Cardmember Agreement ............................. 5

        1. Federal Courts Apply A Presumption Of Arbitrability. ................. 5

        2. A Valid Agreement To Arbitrate Between Plaintiff And American Express Exist Under Utah Law. ........................................ 6

        3. Plaintiff's Claim Falls Squarely Within The Scope Of The Arbitration Provision. .......................................................................... 9

    C. This Action Should Be Stayed Pending Completion Of Arbitration. ..... 10

IV. CONCLUSION ...................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
    513 U.S. 265 (1995) .................................................................................................. 5

Alonso v. Am. Express Co.,
    No. 2:22-cv-132-JAW, 2023 WL 196619 (D. Me. Jan. 17, 2023) ................................ 8

Am. Express Co. v. Italian Colors Rest.,
    570 U.S. 228 (2013) .................................................................................................. 1

Aneke v. Am. Express Travel Related Servs., Inc.,
    841 F. Supp. 2d 368 (D.D.C. 2012) .......................................................................... 8

AT&T Mobility LLC v. Concepcion,
    563 U.S. 333 (2011) .............................................................................................. 1, 5

AT&T Techs., Inc. v. Commc'ns Workers of Am.,
    475 U.S. 643 (1986) .................................................................................................. 9

Biller v. Am. Express Co.,
    No. 19-cv-7173, 2021 WL 7208647 (E.D.N.Y. Feb. 23, 2021) ................................ 10

Buckeye Check Cashing, Inc. v. Cardegna,
    546 U.S. 440 (2006) .................................................................................................. 5

Bybee v. Abdulla,
    189 P.3d 40 (Utah 2008) ........................................................................................... 7

Chiron Corp. v. Ortho Diagnostic Sys., Inc.,
    207 F.3d 1126 (9th Cir. 2000) .................................................................................. 6

Com. Union Assocs. v. Clayton,
    863 P.2d 29 (Utah Ct. App. 1993) ............................................................................. 7

CompuCredit Corp. v. Greenwood,
    565 U.S. 95 (2012) .................................................................................................... 1

Green Tree Fin. Corp.-Ala. v. Randolph,
    531 U.S. 79 (2000) .................................................................................................. 6

*Jeanes v. Arrow Ins. Co.*,
    494 P.2d 1334 (Ariz. App. 1972) ............................................................................. 5

Khanna v. Am. Express Co.,
    No. 11-cv-6245 (JSR), 2011 WL 6382603 (S.D.N.Y. Dec. 14, 2011) .............................. 8

Klein v. Experian Info. Sols. Inc.,
    No. 19-cv-11156, 2020 WL 6365766 (S.D.N.Y. Oct. 29, 2020) ................................... 10

Marmet Health Care Ctr., Inc. v. Brown,
    565 U.S. 530 (2012) .................................................................................................. 1

Miller v. Corinthian Colls., Inc.,
    769 F. Supp. 2d 1336 (D. Utah 2011) ........................................................................ 8

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
    473 U.S. 614 (1985) .............................................................................................. 6, 9

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
    460 U.S. 1 (1983) .................................................................................................. 5, 6

Perry v. Thomas,
    482 U.S. 483 (1987) .................................................................................................. 5

Piccini v. Wells Fargo Auto Fin., Inc.,
    No. 08-cv–8125–PCT–DGC, 2009 WL 307276 (D. Ariz. Feb. 9, 2009) ..................... 10

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) .................................................................................................. 5

Rent-A-Ctr., W., Inc. v. Jackson,
    561 U.S. 63 (2010) .................................................................................................... 1

Shearson/Am. Express, Inc. v. McMahon,
    482 U.S. 220 (1987) .................................................................................................. 6

Smith v. ComputerTraining.com Inc.,
   772 F. Supp. 2d 850 (E.D. Mich. 2011), aff'd, 531 F. App'x 713 (6th Cir. 2013) .................................................................................................................. 8

Spann v. Am. Express Travel Related Servs. Co., Inc.,
   224 S.W.3d 698 (Tenn. Ct. App. 2006) ........................................................................ 8

**Statutes**

A.R.S. § 12-1502 ............................................................................................................. 1

A.R.S. § 12-1502(a) ......................................................................................................... 5

A.R.S § 12-1502(D) ......................................................................................................... 1

9 U.S.C. §§ 1-16 ...................................................................................................... 4, 5, 6

9 U.S.C. § 2 ...................................................................................................................... 5

9 U.S.C. § 4 ...................................................................................................................... 4

FAA ............................................................................................................................. 1, 6

FAA Section 3 ............................................................................................................... 10

Fair Credit Reporting Act ................................................................................................ 1

Fair Credit Reporting Act, 15 U.S.C.a-2(a)(1)(A) .......................................................... 4

FCRA ............................................................................................................................. 10

Federal Arbitration Act, 9 U.S.C. § 1, et seq. ................................................................. 1

Utah Code Ann. § 25-5-4(2)(e) ....................................................................................... 7

Utah Code Ann. §§ 70C-4-102(2)(b) .............................................................................. 7

4892-2906-9152, v. 2

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      INTRODUCTION**

Defendant American Express National Bank ("American Express"), erroneously sued as American Express Company, submits this Motion to Compel Arbitration and Stay Action (the "Motion") and requests that the Court enter an order, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq. (the "FAA"), and A.R.S. § 12-1502, compelling plaintiff Peter Kristofer Strojnik ("Plaintiff") to arbitrate his dispute against American Express and staying this action pending completion of arbitration pursuant to A.R.S § 12-1502(D).

By this action, Plaintiff alleges that he made a settlement payment of $3,648.78, to satisfy his $5,473.00 American Express Platinum Card balance and, in return, American Express would notify the credit reporting agencies that the debt was settled. According to Plaintiff, American Express then furnished inaccurate information to the credit reporting agencies, allegedly in violation of the federal Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. (the "FCRA"). Regardless of the merit of this claim, which American Express disputes, Plaintiff's claim against American Express must be arbitrated pursuant to the arbitration provision (the "Arbitration Provision") in the American Express Cardmember Agreement (the "Cardmember Agreement") that governs Plaintiff's American Express card account.

Under the FAA, agreements to arbitrate are presumed to be valid and enforceable according to their terms. Indeed, in a series of decisions, the United States Supreme Court has repeatedly confirmed that the FAA strongly favors the validity and enforceability of arbitration agreements and that the terms of such agreements must be vigorously enforced. See Am. Express Co. v. Italian Colors Rest., 570 U.S. 228 (2013); Marmet Health Care Ctr., Inc. v. Brown, 565 U.S. 530, 532 (2012); CompuCredit Corp. v. Greenwood, 565 U.S. 95, 98 (2012); AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 336 (2011); Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63 (2010). This precedent makes clear that arbitration agreements, like the Arbitration Provision here, must be enforced as written.

Accordingly, American Express respectfully requests that the Court enter an order: (1) directing Plaintiff to arbitrate all disputes related to the American Express credit card accounts at issue, pursuant to the terms of the Arbitration Provision; and (2) staying this action until it has been resolved through arbitration.

## II.  FACTUAL BACKGROUND

### A.  The Parties

Plaintiff alleges that he is an attorney licensed in Arizona and California. (ECF No. 1, Complaint ("Compl.") ¶ 1.)  American Express is a Utah national bank. (Declaration of Keith Herr ("Herr Decl.") ¶ 1.)

### B.  Plaintiff's American Express Card Account and The Binding Arbitration Provision.

Plaintiff applied for, and American Express opened, an American Express Platinum Card account ending in 1006 (the "Account"), on or about July 18, 2018. (Herr Decl. ¶ 3.) Consistent with its standard business practices, American Express mailed Plaintiff his American Express card together with the cardmember agreement governing the Account when the Account was opened. (Id. at ¶ 4 & Ex. A )  The Cardmember Agreement states, "When you use the Account . . . you agree to the terms of the [Cardmember] Agreement." (Id., Ex. A, Part 2 of 2 (provision entitled "About your Cardmember Agreement").)  After receiving the Cardmember Agreement, Plaintiff proceeded to make purchases on the Account. (Id. at ¶ 6 & Ex. B.)

The Cardmember Agreement contained a provision entitled "Claims Resolution," which includes the Arbitration Provision. (Id., Ex. A, Part 2 of 2 of Cardmember Agreement, at 6.)  The current and applicable Arbitration Provision provides, in pertinent part:

**CLAIMS RESOLUTION**

**. . . You may reject the arbitration provision by sending us written notice within 45 days after your first card purchase. See *Your Right to Reject Arbitration below*.**

For this section, *you* and *us* includes any corporate parents, subsidiaries, affiliates or related persons or entities. *Claim* means any current or future claim, dispute or controversy relating to your Account(s), this Agreement, or any agreement or relationship you have or had with us, except for the validity, enforceability or scope of the Arbitration provision. *Claim* includes but is not limited to: (1) initial claims, counterclaims, crossclaims and third-party claims; (2) claims based upon contract, tort, fraud, statute, regulation, common law and equity; (3) claims by or against any third party using or providing any product, service or benefit in connection with any account; and (4) claims that arise from or relate to (a) any account created under any of the agreements, or any balances on any such account, (b) advertisements, promotions or statements related to any accounts, goods or services financed under any accounts or terms of financing, (c) benefits and services related to card membership (including fee-based or free benefit programs, enrollment services and rewards programs) and (d) your application for any account. . .

### Arbitration

You or we may elect to resolve any claim by individual arbitration. Claims are decided by a neutral arbitrator.

**If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or have a jury trial on that claim. Further, you and we will not have the right to participate in a representative capacity or as a member of any class pertaining to any claim subject to arbitration. Arbitration procedures are generally simpler than the rules that apply in court, and discovery is more limited. The arbitrator's decisions are as enforceable as any court order and are subject to very limited review by a court. Except as set forth below, the arbitrator's decision will be final and binding. Other rights you or we would have in court may also not be available in arbitration.**

### Initiating Arbitration

. . .

You or we may otherwise elect to arbitrate any claim at any time unless it has been filed in court and trial has begun or final judgment has been entered. . .

### Continuation

This section will survive termination of your Account . . . .

-3-

4892-2906-9152, v. 2

(Id., Ex. A, Part 2 of 2, at 7.)  The Cardmember Agreement further states: "When you use the Account (or you sign or keep the card), you agree to the terms of the [Cardmember] Agreement." (Id., Ex. A, Part 2 of 2, "About your Cardmember Agreement.")  After Plaintiff received the physical American Express card together with the Cardmember Agreement that American Express mailed to Plaintiff following opening of the Account, Plaintiff made purchases on the Account.  (Id. ¶ 7 & Ex. B.)  Plaintiff did not reject the Arbitration Provision in the Cardmember Agreement as American Express permitted him to do.  (Id. ¶ 7.)

### C. Allegations of the Complaint

By his Complaint, Plaintiff alleges that American Express "reported to credit reporting agencies that Plaintiff owed $9,121.95 on [his] credit card." (Compl. ¶ 8.)  Plaintiff alleges that both parties agreed to settle the Account for $3,648.78.  (Id. ¶ 10.)  Plaintiff contends that, after he made the settlement payment, American Express failed to contact the credit reporting agencies to advise that the payment was made and that no further amounts were owed and instead reported that the Account was charged off and that Plaintiff still owed $5,473. (See id. ¶ 12.)  Based on the foregoing, Plaintiff alleges that he suffered damages and asserts claims for violation of the Fair Credit Reporting Act, 15 U.S.C.a-2(a)(1)(A), breach of contract and fraud. (See id. ¶¶ 13-31.)

## III. ARGUMENT

### A. Legal Standard

The FAA provides that:
> [a] party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.  Meanwhile, Arizona law provides that:

-4-

> On application of a party showing an agreement described in § 12-1501, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party. Otherwise, the application shall be denied.

A.R.S. § 12-1502(a).

This Court should issue an Order compelling arbitration because: (1) the Arbitration Provision is an enforceable agreement between American Express and Plaintiff to submit his dispute to binding arbitration; and (2) through the pending action, a controversy exists between Plaintiff and American Express that is subject to the Arbitration Provision.

### B. Plaintiff's Claim Is Subject To Binding Arbitration Pursuant To The Arbitration Provision In The Cardmember Agreement.

#### 1. Federal Courts Apply A Presumption Of Arbitrability.

Section 2 of the FAA mandates that a binding arbitration agreement in a contract "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract,'" such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (internal citations omitted);[1] see also Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440,

---

[1] The United States Supreme Court has made clear that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. *See, e.g., Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967). There is no question that the transactions at issue here involve interstate commerce, as Plaintiff appears to be either an Arizona or California resident (only alleging where he is admitted to practice law, but American Express's records reflect that he is a _____ resident) and American Express is a Utah national bank. Nonetheless, Arizona courts have routinely and consistently held that public policy favors arbitration to resolve disputes. *Jeanes v. Arrow Ins. Co.*, 494 P.2d 1334, 1336 (Ariz. App. 1972).

-5-

1  443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and
2  places arbitration agreements on equal footing with all other contracts."). "[Q]uestions of
3  arbitrability must be addressed with a healthy regard for the federal policy favoring
4  arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983);
5  see also Perry v. Thomas, 482 U.S. 483, 490 (1987) (stating that arbitration agreements falling
6  within the scope of the FAA "must be 'rigorously enforce[d]'" (citations omitted)). "[A]ny
7  doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."
8  Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25.

9      Pursuant to the FAA, arbitration must be compelled where: (1) a valid agreement to
10 arbitrate exists; and (2) the agreement encompasses the claims at issue. See Chiron Corp. v.
11 Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). An arbitration agreement
12 governed by the FAA is presumed to be valid and enforceable. See Shearson/Am. Express,
13 Inc. v. McMahon, 482 U.S. 220, 226 (1987); Mitsubishi Motors Corp. v. Soler Chrysler-
14 Plymouth, Inc., 473 U.S. 614, 626-27 (1985). The party resisting arbitration bears the burden
15 of showing that the arbitration agreement is invalid or does not encompass the claims at issue.
16 Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 92 (2000).

17     The Arbitration Provision in Plaintiff's Cardmember Agreement is valid, and Plaintiff's
18 claims are clearly within the provision's scope. Accordingly, the Arbitration Provision must
19 be enforced as written.

20     **2.    A Valid Agreement To Arbitrate Between Plaintiff And American
21     Express Exist Under Utah Law.**

22     American Express cardmember agreements are expressly governed by a Utah choice-
23 of-law provision. (Herr Decl., Ex. A, Part 2 of 2 of Cardmember Agreement, at 6.) Thus,
24 while the FAA governs the enforceability of the Arbitration Provision, Utah law governs the
25 determination of whether a valid agreement to arbitrate exists. See First Options of Chi., Inc.
26 v. Kaplan, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate

a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."); Meyer v. Uber Techs., Inc., 868 F.3d 66, 73-74 (2d Cir. 2017) ("[B]efore an agreement to arbitrate can be enforced, the district court must first determine whether such agreement exists between the parties. [] This question is determined by state contract law." (citation omitted)).

There is no question that the Cardmember Agreement, including the Arbitration Provision, is valid under Utah law. Utah law provides:

> A credit agreement is binding and enforceable . . . if: (i) the debtor is provided with a written copy of the terms of the agreement; (ii) the agreement provides that any use of the credit offered shall constitute acceptance of those terms; and (iii) after the debtor receives the agreement, the debtor, or a person authorized by the debtor, requests funds pursuant to the credit agreement or otherwise uses the credit offered.

Utah Code Ann. § 25-5-4(2)(e). Further, Utah law expressly allows arbitration provisions to be included in open-end credit agreements. See Utah Code Ann. §§ 70C-4-102(2)(b) (providing that "[a] creditor may change an open-end consumer credit contract in accordance with this section to include arbitration or other alternative dispute resolution mechanism"), 70C-4-105(1) (providing that "a creditor may contract with the debtor of an open-end consumer credit contract for a waiver by the debtor of the right to initiate or participate in a class action related to the open-end consumer credit contract").

"It is a fundamental contract law that the parties may become bound by the terms of a contract even though they did not sign the contract, where they have otherwise indicated their acceptance of the contract, or led the other party to so believe that they have accepted the contract." Com. Union Assocs. v. Clayton, 863 P.2d 29, 34 (Utah Ct. App. 1993) (quoting Ercanbrack v. Crandall–Walker Motor Co., 550 P.2d 723, 725 (Utah 1976)). Indeed, the Supreme Court of Utah has expressly acknowledged this principle applies to unsigned arbitration agreements, holding that "the law recognizes circumstances in which a party who

never expressly consented to arbitrate a dispute may surrender his right to go to court." Bybee v. Abdulla, 189 P.3d 40, 43 (Utah 2008) (citing Am. Express Travel Related Servs. Co. v. Am. Fine Art & Frame Co., No. CIV.A. 3:03-CV-2348L, 2004 WL 1144103 (N.D. Tex. May 20, 2004)); see Com. Union Assocs., 863 P.2d at 34 ("It is . . . established that the purpose of a signature is to demonstrate 'mutuality of assent' which could as well be shown through the conduct of the parties." (internal quotation marks omitted)).

Consistent with Utah law, American Express provided Plaintiff with the Cardmember Agreement together with his physical American Express card when he opened the Account. (Herr Decl. ¶ 4 & Exs. A-E.) The Cardmember Agreement states that use of the card constitutes acceptance of its terms. (Id. Exs. A-E.) Following receipt of the Cardmember Agreement together with the corresponding American Express card, Plaintiff used the Account, thereby accepting the terms of the Cardmember Agreement, including the Arbitration Provision contained in the Cardmember Agreement. (Id. ¶ 6 & Exs. A-J.) Accordingly, as numerous other courts have found for over a decade, the Arbitration Provision is a valid and enforceable agreement to arbitrate under Utah law. See, e.g., Alonso v. Am. Express Co., No. 2:22-cv-132-JAW, 2023 WL 196619 (D. Me. Jan. 17, 2023) ("Applying Utah law to determine whether the Arbitration Provision is a valid contractual agreement, the Court concludes it is."); Aneke v. Am. Express Travel Related Servs., Inc., 841 F. Supp. 2d 368, 376, 378 (D.D.C. 2012) (holding that arbitration agreement is "valid and enforceable under Utah law, which is the relevant state law in this case" and rejecting plaintiffs' "policy argument about the limits of arbitration and the prejudicial impact it has on their statutory claims"); Khanna v. Am. Express Co., No. 11-cv-6245 (JSR), 2011 WL 6382603, at *3-4 (S.D.N.Y. Dec. 14, 2011) (arbitration agreement is "binding and enforceable" under Utah law where cardmember agreement provided that use of the card constituted assent to the agreement's terms and plaintiff used the card); Miller v. Corinthian Colls., Inc., 769 F. Supp. 2d 1336, 1348-49 (D. Utah 2011) (holding that arbitration provision is not substantively or procedurally

unconscionable under Utah law); Smith v. ComputerTraining.com Inc., 772 F. Supp. 2d 850, 856-57 (E.D. Mich. 2011) (enforcing Utah choice-of-law provision and finding that arbitration provision is not unconscionable under Utah law), aff'd, 531 F. App'x 713 (6th Cir. 2013); Spann v. Am. Express Travel Related Servs. Co., Inc., 224 S.W.3d 698, 718 (Tenn. Ct. App. 2006) (upholding American Express's Arbitration Provision under Utah law against an unconscionability challenge).

### 3. Plaintiff's Claim Falls Squarely Within The Scope Of The Arbitration Provision.

Where, as here, the parties have entered into a valid arbitration agreement, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Mitsubishi Motors Corp., 473 U.S. at 626. Where the arbitration clause is broad, there is a heightened presumption of arbitrability, such that, "[i]n the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." AT&T Techs., Inc., 475 U.S. at 650 (quoting United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 584-85 (1960)).

The Arbitration Provision expressly cover the types of claims at issue here. It broadly encompasses "any current or future claim, dispute or controversy relating to your Account(s), this Agreement, or any agreement or relationship you have or had with us . . . ." (Herr Decl., Ex. A, Part 2 of 2, "Claims Resolution.") The term "claim" "is to be given the broadest possible meaning" and includes "claims based upon contract, tort, fraud, statute, regulation, common law and equity" and expressly includes "claims that arise from or relate to (a) any account created under any of the agreements . . ." (Id.) Further, the Cardmember Agreement

contain a provision entitled "Credit Reports," which states in relevant part "[y]ou agree that we will give information about the Account to credit reporting agencies. We will tell a credit reporting agency if you fail to comply with any term of this Agreement. This may have a negative impact on your credit report." (Herr Decl., Ex. A, Part 2 of 2, "Credit Reports.")

Plaintiff's claims are within the scope of the Arbitration Provision as they are based upon a question of contractual and statutory credit reporting obligations. Specifically, the broad contractual language plainly covers Plaintiff's claims regarding American Express credit reporting relating to the Accounts and arising out of the FCRA. See, e.g., Biller v. Am. Express Co., No. 19-cv-7173, 2021 WL 7208647, at *6 (E.D.N.Y. Feb. 23, 2021) ("Plaintiff's claims, which all arise under the FCRA, are clearly encompassed within the terms of the [American Express] arbitration agreement."); Klein v. Experian Info. Sols. Inc., No. 19-cv-11156, 2020 WL 6365766, at *8 (S.D.N.Y. Oct. 29, 2020) ("This language [in the American Express Cardmember Agreement] encompasses Plaintiff's statutory FCRA claims."); Piccini v. Wells Fargo Auto Fin., Inc., No. 08-cv–8125–PCT–DGC, 2009 WL 307276, at *1-2 (D. Ariz. Feb. 9, 2009) (FCRA claims "ar[ose] out of" or "related to" agreement).

**C.   This Action Should Be Stayed Pending Completion Of Arbitration.**

Section 3 of the FAA expressly provides that, where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Because Plaintiff must be compelled to arbitrate her claim, the action should be stayed pending the conclusion of the arbitration.

**IV.   CONCLUSION**

For the foregoing reasons, American Express respectfully requests that the Court grant this Motion and enter an order directing Plaintiff to arbitrate his dispute and staying the action pending completion of arbitration.

**RESPECTFULLY SUBMITTED** this 27th day of April, 2023.

**IANNITELLI MARCOLINI, P.C.**

By  /s/ *Daniel P. Velocci*
    Daniel P. Velocci
    *Attorneys for Defendant*

4892-2906-9152, v. 2